IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WASHINGTON GAS LIGHT CO.,       )
                                )
        Plaintiff,              )
                                )
v.                              )   Case No. 1:13-cv-560
                                )
INTERNATIONAL BROTHERHOOD       )
OF TEAMSTERS, LOCAL 96,         )
                                )
        Defendant.              )

## MEMORANDUM OPINION

This matter comes before the Court on (1) Defendant international Brotherhood of Teamsters, Local 96's ("Local 96") Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Dkt. No. 6, 7) and Plaintiff Washington Gas Light Company's ("Washington Gas") Motion for Summary Judgment (Dkt. No. 17). All motions are opposed and the Court held a hearing on the matter on July 26, 2013.

## BACKGROUND

Defendant Local 96 and Plaintiff Washington Gas signed a collectively bargained agreement ("the Agreement") that went into effect in June 2012 and runs through May 2015. The parties had previously signed an agreement, substantively identical in all parts relevant to this matter, which was in effect from May 2007 through May 2012. On February 13, 2012, Local 96 filed a grievance protesting the termination of Washington Gas employee Antuan Peterson, a Leak Survey Assistant II. Washington Gas, the employer, discharged Mr. Peterson for alleged "falsification of documents and poor job performance." *See* Compl., Exhibit C. In response, Local 96 filed a grievance seeking to have the employee reinstated.

Under the 2007 Agreement, Local 96's grievance was subject to the Agreement's

1

arbitration provision, requiring the parties to bring the matter before an arbitrator. The Agreement specifically outlines how and when a party may unilaterally strike an arbitrator. Article XVIII, section 16(a) states:

> A panel of nine (9) arbitrators shall be jointly compiled and agreed upon by the parties and shall be updated from time to time by mutual agreement. During the term of Contract either party may, for any reason, strike up to two (2) arbitrators. If the Company or the Union elects to strike an arbitrator, it must do so no later than 24 hours before the time the arbitration hearing is scheduled to begin.

In May 2012, the parties notified Arbitrator Jerome Ross that he had been assigned to conduct the arbitration concerning Local 96's grievance. The parties agreed that the arbitration hearing would be scheduled for August 14, 2012. Plaintiff then sought to have the hearing rescheduled and the parties agreed to appear before Arbitrator Ross on December 6, 2012. On November 29, 2012, prior to the scheduled hearing date, Plaintiff sent a letter informing Defendant that it was "striking" Arbitrator Ross from the permanent arbitration panel.

Nevertheless, on December 6, Arbitrator Ross proceeded with the arbitration hearing absent Washington Gas or any of its representatives. At the hearing, Ross heard testimony from Local 96 officials pertaining to the grievance as well as the testimony regarding the negotiation history surrounding the provision outlining striking arbitrators. Ross determined that Plaintiff's attempt to "strike" him from the arbitration panel was not proper.

On March 12, 2013, the Arbitrator issued a ruling in favor of Defendant, sustaining the grievance and ordering the employee reinstated with back pay, less a 14-day unpaid suspension. In the same ruling, Ross found that "the Company's decision to terminate the arbitrator violated Article XVIII, Section 16(a) (para. 5) of the Labor Contract."

Plaintiff seeks to have this Court stay enforcement of the Arbitrator's award until the Court's determination and, ultimately, vacate the Arbitrator's decision.

## **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12, an adequate complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice. *Id.* (citing *Twombly*, 550 U.S. at 556). Further, a Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under Fed. R. Civ. P. 56, summary judgment should be granted where the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained, a fact is "'material' only if it might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Finally, in making a summary judgment determination, the court must view the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986).

Specifically, when a court considers a matter where a party seeks to vacate an arbitrator's decision, it must apply a highly deferential standard in favor of the arbitrator's determination. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). This deferential treatment reflects the fact that the parties sought to resolve their differences through

3

arbitration and not the court. *Id.* Put simply, "a court should not reject an award on the ground that an arbitrator misread the contract if the arbitrator is even arguably construing or applying the contract." *Rock-Tenn Co. v. United Paperworkers Int'l Union*, 184 F.3d 330, 337 (1987).

## ANALYSIS

Defendant's motion to dismiss or for summary judgment argues that the Court should not substitute its interpretation of the contract provision for that of the Arbitrator. In support of its position, Defendant cites to *Westvaco Corp. v. United Paperworkers Int'l Union*, which established that "absent the most unusual circumstances, courts must uphold and enforce arbitral awards." *Westvaco*, 171 F.3d 971, 974 (4th Cir. 1999). Defendant argues that such a high bar has not been met and the Court must not vacate the Arbitrator's decision.

As part of the December 6, 2012 arbitration hearing, Arbitrator Ross determined that Article XVIII, Section 16 (removal of arbitrators) contained a latent ambiguity. The basis for the Arbitrator's finding was the unrebutted testimony of Michael Hampton, President of Local 96. Mr. Hampton testified that the bargaining history of Article XVIII revealed the parties intended the provision to be read as meaning that either party to arbitration would have 24 hours *before they agreed on an arbitration date* to strike the arbitrator. The Arbitrator concluded that Mr. Hampton's testimony was credible to establish the parties' intent through the bargaining history. Based on this conclusion, Arbitrator Ross determined that the striking of arbitrators could only occur prior to the "initially established" hearing date. As a result, he found that he had jurisdiction to hear the grievance and ruled in favor of Defendant. The provision in question was as follows: "If the Company or the Union elects to strike an arbitrator, it must do so no later than 24 hours before the time the arbitration hearing is scheduled to begin." The Arbitrator determined that the provision should instead be read as such: "If the Company or the Union

4

elects to strike an arbitrator, it must do so no later than 24 hours before the time the arbitration hearing is *initially established* to begin."

Defendant argues the Court should not replace the Arbitrator's reading of the contract with its own. If the force of arbitration is to remain uncorrupted by the courts, Defendant argues, this type of arbitrator's determination must be left undisturbed. Notwithstanding the arguments presented by Defendant and the reasoning offered in the Arbitrator's ruling, the provision before the Court clearly contains no ambiguities. Article XVIII, Section 16 clearly states that strikes may be made "no later than 24 hours before the time the arbitration hearing is scheduled to begin." This language certainly refers to the period of time prior to the beginning of the scheduled hearing, not the time prior to the scheduling of the hearing. It is difficult to imagine how the provision could be read to incorporate language such as "initially established," which dramatically alters its meaning.

Furthermore, the Arbitrator supports his determination that he maintains jurisdiction regardless of the exercised strike based on the "undisputed" testimony of Michael Hampton, a Local 96 official. Mr. Hampton testified at the hearing, absent the opposing party, that both parties attempted to insert language into the contract to address this issue, but compromised on the provision at hand, which he claimed should be read to mean "both sides would have 24 hours before they agreed on an arbitration date to strike the arbitrator." *See* Compl. Exhibit A at 12. Even accepting the Arbitrator's convenient characterization of hearing testimony where only one party is present as "undisputed," there is no need look to the "intent" derived from negotiation history where the language of the governing contract is unambiguous. Furthermore, the parties chose to keep the Section XVIII language consistent between the May 2007 Agreement and the newly adopted contract and did not amend the provision to limit the timeliness to the "initially

5

established" schedule.

Ultimately, the U.S. Supreme Court has held that an "arbitrator may not ignore the plain language of the contract" *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 38 (1987). By ignoring the plain language of the contract the Arbitrator does not "draw its essence" from the underlying agreement. *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). Plaintiff argues in its Motion for Summary Judgment that the Court may not enforce the Arbitrator's award because it directly conflicts with the plain language of the contract. We agree.

## CONCLUSION

The plain language of Section XVIII, Section 16 clearly states that either party may "elect[] to strike an arbitrator...no later than 24 hours before the time an arbitration hearing is scheduled to begin." The arbitrator acted beyond the discretion provided to him in the collectively bargained agreement when he determined that the provision contained a latent ambiguity and interpreted the agreement in a blatantly inconsistent manner. The conclusion reached by the Arbitrator would force the parties to read language into the provision, specifically the language "initially established," where no such language is found. While the Arbitrator must be granted deference absent the most unusual of circumstances, this matter presents such a circumstance.

When Plaintiff Washington Gas provided a letter to the Arbitrator and Local 96 seeking to strike Arbitrator Ross from the panel, it did so in compliance with the plain language of Article XVIII, Section 16 of the Agreement. At that point in time, the Arbitrator no longer had jurisdiction pursuant to the language of the Agreement. He was, therefore, without jurisdiction to hold the December 6, 2012 hearing and his March 12, 2013 ruling sustaining Defendant's

grievance is not enforceable under the Agreement.

For the reasons stated in open court, those contained herein, and for good cause shown, Defendant's Motion to Dismiss (Dkt. No. 6) is DENIED. Defendant's Motion for Summary Judgment (Dkt. No. 7) is DENIED. Plaintiff's Motion for Summary Judgment (Dkt. No. 17) is GRANTED.

Arbitrator Ross's award of March 11, 2013 is VACATED.

An appropriate Order shall issue.

August 13, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge